**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| EDWIN BRAYAN VASQUEZ GARCIA, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTT LADWIG, Acting Field Office | ) | No. 2:26-cv-02073-SHL-tmp |
| Director of the New Orleans Field Office of | ) | |
| Immigrations and Customs Enforcement, in | ) | |
| his official capacity, | ) | |
| Respondent. | ) | |

**ORDER GRANTING PETITION**

On January 23, 2026, Petitioner Edwin Brayan Vasquez Garcia filed a petition for writ of

habeas corpus under 28 U.S.C. § 2241 because he is being held in immigration detention without

a bond hearing. (ECF No. 1.) He seeks a declaration that his detention under 8 U.S.C. § 1225

violates his due process rights, release or a bond hearing before an immigration court, and an

award of attorney's fees[1] under the Equal Access to Justice Act. (Id. at PageID 7.) On February

5, 2026, the Court issued an order requiring Vasquez Garcia to file supplemental facts, setting a

briefing schedule, and staying the transfer of Vasquez Garcia from the West Tennessee

Detention Facility. (ECF No. 6.) Respondent Scott Ladwig[2] filed a response on February 17,

---

[1] However, a motion for attorney's fees is due "within 30 days of final judgment." 28
U.S.C. § 2412(d)(1)(B). Under the EAJA, a "final judgment" is a judgment that is final and not
appealable; here, that time occurs sixty days after the judgment, as that is the deadline for appeal.
Melkonyan v. Sullivan, 501 U.S. 89, 96 (1991). Therefore, a motion for costs and attorney's
fees ripens ninety days after judgment here, and should not be considered earlier. See
Castaneda-Mondragon v. Acuna, No. 25-cv-03044, ECF No. 15 (W.D. Tenn. filed Jan. 5, 2026).
The Court therefore defers on the issue of fees and costs until the motion, if filed, ripens.
[2] Respondent avers that Mellissa Harper, who was initially named as respondent, "is no
longer an ICE employee." (ECF No. 10 at PageID 35.) Given Respondent's request to enter

2026.  (ECF No. 10.)  For the reasons explained below, Vasquez Garcia is entitled to immediate release, and the Petition is **GRANTED**.

### BACKGROUND

Vasquez Garcia is from Mexico.  In May 2000, his parents unlawfully brought him, as an infant, into the United States, without presenting him at a port of entry or to an immigration officer.  (ECF No. 8 at PageID 23–24.)  He has continuously lived in the United States for twenty-five years, during which time he attended school, worked at La Michoacana ice cream shop, married, bought a home, and had two children, who are United States citizens.  (Id. at PageID 24.)  He has no criminal record.  (Id. at PageID 25.)

On January 16, 2026, Vasquez Garcia was apprehended by Immigrations and Customs Enforcement ("ICE") officers under unknown circumstances, and detained in the West Tennessee Detention Facility.  (Id.; ECF Nos. 1-3 at PageID 12–13; 10 at PageID 36.)  He was charged under 8 U.S.C. § 1225 and was never provided a hearing before an immigration judge ("IJ").  (ECF No. 1-3 at PageID 13.)

Indeed, under recently adopted guidance from the Department of Homeland Security ("DHS") and ICE, Vasquez Garcia is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and is deemed by Respondent to be ineligible for release on bond.  Until recently, however, most noncitizens in this situation were given bond hearings.  E.g., Godinez-Lopez v. Ladwig, No. 25-CV-02962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025).  Section 1226(a) allows immigration authorities to release immigrants from detention on a bond of $1,500

---

Scott Ladwig as the sole respondent here, and Vasquez Garcia's lack of opposition, that request is **GRANTED**.  The Clerk is **DIRECTED** to modify the docket to reflect this change.

or more, unless they require detention for certain reasons.  For example, noncitizens with certain criminal records may not be released on bond under § 1226(c).

Section 1225(b)(2)(A), on the other hand, prohibits a bond for all "applicants for admission" who are "seeking admission."  "Applicants for admission" has, for decades, been interpreted to mean recent arrivals, specifically those who have not been "physically present in the United States continuously" for the previous two years.  See 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("An alien described in this clause is an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . .").

However, on July 8, 2025, ICE, in coordination with the Department of Justice ("DOJ"), issued a new policy reinterpreting §§ 1225(b)(2)(A) and 1226(a).  Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.").  The policy reclassified all undocumented immigrants, even those who have lived in the United States for years, as "applicants for admission."  Id.  And all "applicants for admission" are required to be detained for removal proceedings without a bond hearing under § 1225(b)(2)(A).  Id.

Thus, ICE's new legal interpretation makes § 1225(b)(2)(A), not § 1226(a), the statute governing removal proceedings for all immigrants without legal status.  As a result, all undocumented immigrants awaiting removal are detained without a bond hearing.  This new interpretation was later adopted by the BIA in a published decision, Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).  (ECF No. 1-3 at PageID 13–14.)

3

Vasquez Garcia, who has lived continuously in the United States for twenty-five years, faces the risk of continued detention without a bond hearing.  His Petition alleges Due Process violations under the Fifth Amendment.  (ECF No. 1-3 at PageID 15–16.)  He seeks a writ of habeas corpus ordering a bond hearing, and clarifies in his reply that he seeks "immediate release, or at a minimum, release on reasonable conditions pending resolution of his removal proceedings."  (ECF No. 11 at PageID 49–50, 53.)  He argues that no lesser remedy is adequate, given DHS policy, the futility of appealing to the BIA, and the fact that the Court has ruled similarly in recent cases.  (Id. at PageID 50–54.)

In response, Ladwig contends that Vasquez Garcia failed to exhaust his administrative remedies, § 1225 applies here, no due process violation occurred, and that, even if the Court grants Vasquez Garcia relief, it should only be a bond hearing, not immediate release.  (ECF No. 10 at PageID 37.)

## **ANALYSIS**

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  Lopez-Campos v. Raycraft, No. 25-CV-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)).  Vasquez Garcia challenges his detention without bond as violative of his constitutional rights.  (ECF Nos. 1-3 at PageID 13; 11 at PageID 60.)  The Court first considers the threshold question of whether Vasquez Garcia should be required to exhaust his administrative remedies.  Then, the statutes are construed to determine whether §1225 or § 1226 is applicable.  A due process analysis follows. Finally, the appropriate manner of release is discussed.

I.    **Exhaustion**

If Congress "specifically mandates" exhaustion of administrative remedies, a petitioner must pursue relief through those administrative processes before seeking habeas relief. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). When Congress is silent on administrative exhaustion, "sound judicial discretion governs." Id. Thus, the doctrine of prudential exhaustion holds that, in the absence of a textual exhaustion requirement, courts can use discretion to refuse to hear habeas petitions that challenge bond determinations until a petitioner exhausts available administrative remedies. McCarthy, 503 U.S. at 144. The Sixth Circuit has previously applied this doctrine to dismiss petitions for lack of jurisdiction. See Rabi v. Sessions, No. 18-3249, 2018 U.S. App. LEXIS 19661, at 1–2 (6th Cir. July 16, 2018). In the context of immigrant detention, some district courts require detained immigrants to exhaust their administrative remedies—by appealing bond decisions to the BIA and receiving adverse decisions—before the courts will review their habeas petitions. E.g., Villalta v. Greene, No. 25-cv-01594, 2025 U.S. Dist. LEXIS 169688, at *6–7 (N.D. Ohio Aug. 5, 2025).

In some cases, however, exhaustion is excused, and courts review habeas petitioner claims. Courts have reached these conclusions when (1) "the legal question is fit for resolution and delay means hardship, or (2) exhaustion would prove futile." Shalala v. Ill. Council on Long Term Care, 529 U.S. 1, 13 (2000) (citation modified).

An issue is fit for judicial resolution when it presents a purely legal question. Contreras-Lomeli v. Raycraft, No. 25-cv-12826, 2025 U.S. Dist. LEXIS 207162, at *8 (E.D. Mich. Oct. 21, 2025) (citing Loper Bright Enters. v. Raimondo, 603 U.S. 369, 385 (2024)). Further, when administrative procedures involve "an indefinite or unreasonable timeline," such delays result in

5

hardship. Id. If there is a risk of extended, "potentially unlawful detention" during such delay, then exhaustion is excused. Id.

As for futility, waiver of exhaustion "is appropriate when an administrative agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought." Id. at *9 (quoting Cooper v. Zych, No. 09-CV-11620, 2009 U.S. Dist. LEXIS 75423, at *2 (E.D. Mich. Aug. 25, 2009)).

Vasquez Garcia argues that exhaustion should not be required here because 28 U.S.C. § 2241 does not require exhaustion and exhaustion would be futile. (ECF No. 11 at PageID 50–51.) He contends that the Sixth Circuit only treats exhaustion in cases like this as discretionary, which allows waiver. (Id.) He also argues that exhaustion would be futile given the 2025 decision in Yajure Hurtado that IJs lack jurisdiction to preside over bond hearings. (Id. at PageID 51.)

Ladwig argues that the Court should dismiss the Petition based on prudential exhaustion, as Vasquez Garcia has not appealed and received an adverse decision from the BIA. (ECF No. 10 at PageID 37–38.) He recognizes that Congress has not imposed an administrative exhaustion requirement, and that "sound judicial discretion governs." (Id. at PageID 37 (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)). But he points to the Sixth Circuit's opinion in Rabi v. Sessions, No. 18-3249, 2018 U.S. App. LEXIS 19661, at *1–2 (6th Cir. July 16, 2018), and certain decisions in the Northern District of Ohio, e.g. Villalta, 2025 U.S. Dist. LEXIS 169688, which required petitioners to appeal to the BIA before seeking habeas relief under "prudential principles of exhaustion." (Id. at PageID 38.)

Neither 8 U.S.C. §§ 1225 nor 1226 contain a textual exhaustion requirement for immigrants in ICE custody. Similarly, 28 U.S.C. § 2241 lacks an exhaustion requirement. And

6

the Sixth Circuit has not yet spoken on the issue of prudential exhaustion in these recent cases.

See Castaneda-Mondragon v. Acuna, No. 25-cv-03044, ECF No. 13 at PageID 101 (W.D. Tenn.

Dec. 30, 2025).  Therefore, exhaustion may only be required here based on "sound judicial

discretion."  McCarthy, 503 U.S. at 144.  But exhaustion may be excused if "the legal question is

fit for resolution and delay means hardship, or exhaustion would prove futile."  Shalala, 529 U.S.

at 13.

Vasquez Garcia's failure to exhaust is excused.  First, the question he poses in the

Petition is fit for resolution and undue delay would impose hardship on him.  The Parties do not

dispute any material facts.  (See ECF Nos. 8 at PageID 23–25; 10 at PageID 36.)  Thus, deciding

which statute applies to Vasquez Garcia's detention is a purely legal question, "which is right in

a federal court's wheelhouse."  Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8.

Further, if he is required to pursue an appeal with the BIA, his appeal process would likely take

six months or more.  See id. (citing Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 U.S.

Dist. LEXIS 175767, at *9 (E.D. Mich. Sep. 9, 2025)).  Bond hearings were designed to prevent

prolonged detention during removal proceedings, which are often lengthy.  Reyes, 2025 U.S.

Dist. LEXIS 175767, at *9 (citations omitted).  Therefore, denying Vasquez Garcia the chance to

have a bond hearing merely because he did not wait for the BIA's decision may force him "to

endure six months or more of potentially unlawful detention and thus would cause him great

hardship."  Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8.

Furthermore, the futility of exhaustion is an independent reason to excuse exhaustion

here.  The BIA stated in Yajure Hurtado that § 1225(b)(2)(A) applies to detained illegal

7

immigrants who "have been residing in the United States for years."  29 I. & N. Dec. at 220–21.

Thus, any appeal is likely futile, and exhaustion is excused.[3]

## II.    Statutory Interpretation

"A statute should be construed so that effect is given to all its provisions, so that no part

will be inoperative or superfluous, void[,] or insignificant."  Corley v. United States, 556 U.S.

303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)).  Each word within a statute

must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that

'statutory language has meaning only in context.'"  Kentucky v. Biden, 23 F.4th 585, 603 (6th

Cir. 2022) (citation modified) (citing Walters v. Metro. Edu. Enters., Inc., 519 U.S. 202, 207,

(1997)).

Custody over noncitizens during removal proceedings is generally governed by two

statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of

inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and

detention of aliens").  Section 1225(b) requires mandatory detention, providing in relevant part:

> (b)    Inspection of applicants for admission
>           . . .
> (2)    Inspection of other aliens
>     (A)    In general
>         Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

---

[3] Given that exhaustion is waived, Vasquez Garcia's additional arguments about exhaustion need not be considered.  See Sharpe v. Comm'r of Soc. Sec., No. 20-CV-02732, 2022 U.S. Dist. LEXIS 106311, at *30 n.5 (N.D. Ohio Apr. 1, 2022) (collecting cases where courts in the Sixth Circuit declined to address alternative arguments in the interest of judicial economy).

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  An "applicant for admission" is a noncitizen

"present in the United States who has not been admitted."  8 U.S.C. § 1225(a)(1).  Under this

section, all applicants for admission "shall be detained."  Id. § 1225(b)(2)(A).

Section 1226(a), on the other hand, allows for discretionary detention, providing in

relevant part:

> (a)     Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien may be arrested and
> detained pending a decision on whether the alien is to be removed from the
> United States.  Except as provided in subsection (c) and pending such
> decision, the Attorney General—
> (1)     may continue to detain the arrested alien; and
> (2)     may release the alien on—
> (A)     bond of at least $1,500 with security approved by, and
> containing conditions prescribed by, the Attorney General .
> . . .

8 U.S.C. § 1226(a) (emphasis added).  The exception in § 1226(c) prohibits releasing on bond a

noncitizen found to be inadmissible, who also,

> is charged with, is arrested for, is convicted of, admits having committed, or admits
> committing acts which constitute the essential elements of any burglary, theft,
> larceny, shoplifting, or assault of a law enforcement officer offense, or any crime
> that results in death or serious bodily injury to another person . . . .

Id. § 1226(c)(1)(E)(ii).  "Noncitizens arrested and detained under § 1226 have a right to request a

custody redetermination (i.e., a bond hearing) before an IJ."  Lopez-Campos, 2025 WL 2496379,

at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified).  "The IJ evaluates whether there

is a risk of nonappearance or danger to the community."  Id. (citing Guerra, 24 I. & N. Dec. 37,

40 (B.I.A. 2006)).  Thus, except for those noncitizens with a record of certain criminal offenses,

9

§ 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a hearing before an IJ on the issue.[4]

Vasquez Garcia argues that his detention under ICE's new interpretation of § 1225(b)(2)(A) violates his Fifth Amendment due process right.  (ECF Nos. 1 at PageID 7; 1-3 at PageID 15–16; 8 at PageID 28.)  He argues that 8 U.S.C. § 1226(a) applies to his detention because he is an "interior resident," and was not detained at the border as one "seeking admission" into the United States.  (ECF No. 8 at PageID 26.)  Indeed, he asserts that he cannot be considered as "arriving" in any way, as he entered the United States decades ago.  (Id. at PageID 26.)  For these reasons, he seeks immediate release, or at least a "prompt bond hearing before an" IJ.  (ECF Nos. 8 at PageID 32; 11 at PageID 65.)

Ladwig argues that § 1225(b)(2)(A), not § 1226(a), applies to Vasquez Garcia because he "entered [the United States] without inspection or parole" and thus "remains an applicant for admission who is treated, for constitutional purposes, as if stopped at the border."[5]  (ECF No. 10 at PageID 39–40.)  As a result, he asserts, Vasquez Garcia "is subject to mandatory detention and not entitled to a bond hearing."  (Id. at PageID 39.)  Ladwig incorporates by reference similar statutory arguments made by ICE respondents in prior cases such as Monge-Nunez v. Ladwig,

---

[4] See 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . .  After an initial custody determination . . . the respondent may . . . request amelioration of the conditions under which he or she may be released. . . .  [T]he immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .").

[5] The doctrine that an undocumented immigrant who is briefly stopped near the border at or soon after entry, remains considered "stopped at the border" even after being paroled into the United States, is referred to as "entry fiction."  Bahena v. Trump, NO. 25-223-DLB, 2026 U.S. Dist. LEXIS 23861, at *21–23 (E.D. Ky. Feb. 5, 2026); Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020).  The entry fiction doctrine does not apply here, because Ladwig has not shown that Vasquez Garcia belongs to one of the three categories triggering application of that doctrine.

No. 25-cv-03043, 2025 WL 3565348 (W.D. Tenn. Dec. 12, 2025). (Id. at PageID 40.) He emphasizes a recent Fifth Circuit Court of Appeals opinion as persuasive authority for the proposition that continued detention under § 1225 without bond here is valid. (Id. at PageID 41 (discussing Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026)).) According to Ladwig, several other orders adopting his argument—in federal courts in Louisiana, Wisconsin, Texas, California, and in districts in the Sixth Circuit—all "support the Court departing from its reasoning in Godinez-Lopez." (ECF No. 10 at PageID 40–41.)

The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Ladwig's contention that Vasquez Garcia is an "applicant for admission." Beginning with the titles, the title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The title of § 1226(a) is "Apprehension and detention of aliens." Although titles of statutes are not controlling, they are "tools available for the resolution of a doubt about the meaning of a statute." Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified). Here, § 1225's title describes "arriving aliens" who are placed into "expedited removal" proceedings. But Vasquez Garcia was not "arriving" when he was detained far away from the United States border, after having been in this country for twenty-five years. (ECF No. 8 at PageID 24–25.) Also, the record does not show that he was eligible for expedited removal proceedings. (Id. at PageID 24.) Thus, the mandatory detention provision of § 1225 does not apply to him.

Relatedly, the subject matter of § 1225 undercuts Ladwig's reading of the statute. Section 1225 describes the process of inspecting and removing immigrants actively crossing the border. See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the

11

Government must determine whether an alien seeking to enter the country is admissible."). Section 1225 explicitly applies to "an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . ." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). It does violence to the statute to argue that § 1225 applies to Vasquez Garcia, who has been physically present in the United States continuously for two years, and who was not actively crossing the border.

Further, Ladwig's reading of § 1225(b)(2)(A) ignores several words and phrases within the statute itself. "If possible, every word and every provision is to be given effect." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012). But to apply § 1225(b)(2)(A) to Vasquez Garcia would render the following underlined words superfluous:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). The record does not show that Vasquez Garcia was seeking admission at the time of his detention. The language of § 1225(b)(2)(A) makes sense in the context of the border, but not in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for over two decades. To interpret "alien seeking admission" using its ordinary meaning but outside the context of the provision, as argued by Ladwig, is untenable. See Rios Pena v. Ladwig, No. 2:25-cv-03082, 2025 WL 3679766, at *7 (W.D. Tenn. Dec. 18, 2025) ("[Section] 1226 authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings. Respondent has articulated no compelling reason to stray from this commonsense understanding.") (internal quotations and citation omitted).

12

Also, Ladwig's interpretation of § 1225(b)(2)(A) would render § 1226(c) superfluous. That subsection carves out an exception to the general rule that an arrested noncitizen is eligible for a bond. Under subsection (c), a noncitizen with a certain criminal history must be mandatorily detained. 8 U.S.C. § 1226(c)(1)(E)(ii) ("The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . ."). But, under Ladwig's reading of § 1225, all arrested noncitizens must be detained without bond. Thus, § 1226(c) would have no purpose. Yet, courts must "give effect, if possible, to every clause and word of a statute." Duncan v. Walker, 533 U.S. 167, 174 (2001). Vasquez Garcia's reading of the statute is the only one compatible with the presence of § 1226(c). Moreover, he has no criminal record, so this mandatory detention provision cannot conceivably be applied to him. See § 1226(c)(1)(E)(ii).

The plain language of § 1226(a) describes Vasquez Garcia's situation. That section applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Vasquez Garcia was charged with being removable and detained by ICE in Tennessee. Thus, the Attorney General has discretion under this section. She "may continue to detain [him]" or she "may release [him] on bond." (Id.) But the Attorney General may not deny him the bond hearing to which he is entitled. See 8 C.F.R. § 1236.1(c)(8), (d)(1).

Not only is the plain language of §§ 1225 and 1226 sufficient to support granting the Petition, but the Congressional intent behind § 1226(a) is also supportive. In 2025, Congress

13

passed the Laken Riley Act, adding a subsection to § 1226(c) to preclude noncitizens with specific criminal histories from receiving bond.  Pub. L. No. 119-1, 139 Stat. 3 (2025).  Congress would not have added exceptions to the broad rule of § 1226(a) if, as Ladwig asserts, it intended § 1226(a) to give way to § 1225(b)(2)(A) in all cases.  See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) ("The fact that Congress has created specific exceptions to [a rule] hardly proves that the [rule] does not apply generally.  In fact, it proves the opposite.").  On the contrary, Congress's recent attention to § 1226 points to its approval of the interpretation prevailing before July 2025.  After all, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless."  Lopez-Campos, 2025 WL 2496379, at *8 (quoting Maldonado v. Olsen, No. 25-cv-3142, 2025 WL 237441, *12 (D. Minn. Aug. 15, 2025)).

Given the plain language of §§ 1225 and 1226, the arrest and detention of Vasquez Garcia, who has been continuously present in the United States for twenty-five years, is governed by § 1226(a), and is subject to that section's discretionary bond process.

## III.    Due Process

The Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently)."  Lopez-Campos, 2025 WL 2496379, at *9 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)).  In the context of civil immigration detention, the Sixth Circuit applies the balancing test from Mathews v. Eldrige, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen.  See, e.g., United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th

Cir. 2020).  Those factors include (1) "the private interest that will be affected by the official

action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's

interest, including the function involved and the fiscal and administrative burdens that the

additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335.

Vasquez Garcia argues that Ladwig violates the Due Process Clause of the Fifth

Amendment by holding him in "continued detention without a bond hearing."  (ECF No. 1-3 at

PageID 13.)  Specifically, he asserts that his indefinite civil detention is wrongful because he has

not been given a "fair process" before an IJ for a determination of whether "continued

confinement is necessary."  (ECF No. 8 at PageID 29–30.)  Finally, he asserts that, even if the

entry fiction doctrine applies, he does not lose "constitutional protections against indefinite

incarceration."  (ECF No. 11 at PageID 60.)  He contends that, rather, the entry fiction simply

allows "determinations of deportability" to be "made in a streamlined fashion without the

procedural protections afforded to admitted aliens."  (Id.)  But Ladwig contends that he has not

violated Vasquez Garcia's due process rights because, under the entry fiction doctrine, he should

be "'treated' for due process purposes 'as if stopped at the border.'"  (ECF No. 10 at PageID 42

(quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020)).)  He further

argues that, even if "[Vasquez Garcia] is detained under the wrong statute," that mistake does not

make his detention "unconstitutional."  (Id. at PageID 44.)  Finally, Ladwig argues that, if the

Court decides that § 1226 applies here, a bond hearing should be ordered instead of immediate

release, so that an IJ can determine whether to grant Vasquez Garcia a bond.  (Id. at PageID 46.)

Here, because § 1226(a) applies to Vasquez Garcia, he is owed the process given to him

under that statute.  As for the Mathews factors, (1) Vasquez Garcia has a strong private liberty

interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates his risk of flight and

danger to the community, and, (3) given his clean criminal record, it will be difficult for the Government to demonstrate an interest in his detention. Indeed, before he was arrested, Vasquez Garcia was present in the United States for decades. (ECF No. 8 at PageID 23–24.) During those years, he got married, started a family, became a homeowner, paid taxes, and established a career. (Id. at PageID 23–25.) These facts indicate his ties to the United States, his desire to remain, and his expectation that he would remain free from government custody. And, as stated in Section II, the entry fiction doctrine is inapplicable here. See supra Section II, n.5. Moreover, Vasquez Garcia was not otherwise incarcerated when ICE apprehended him. Thus, but for ICE's misuse of § 1225, he would have remained free or at least received a timely bond hearing. Vasquez Garcia's detention without bond violated his liberty interest, which cannot be thrown aside, and his detention under the mandatory detention framework of § 1225(b)(2)(A) violates his due process rights.

Thus, consistent with the Court's decision in Godinez-Lopez, and after consideration of the record, Vasquez Garcia's petition is **GRANTED**. He is entitled to release from custody.

## IV.    Manner of Release

Having determined that Vasquez Garcia must be released, the final question is whether to order his release as an alternative to a bond hearing, or to order his release unconditionally. In the Petition, Vasquez Garcia requests immediate release or a bond hearing. (ECF Nos. 1 at PageID 7; 1-3 at PageID 17.) In response, Ladwig argues that the only appropriate remedy, if § 1226 applies, is an order of a bond hearing before an IJ that enjoins the IJ "from applying §1225." (ECF No. 10 at PageID 46.)

Among the overwhelming number of district courts granting similar petitions, remedies have differed as to the manner of release. See Cardona v. Ladwig, No. 25-CV-01451, 2025 WL

16

3722009, at *7 (M.D. Tenn. Dec. 3, 2025) (surveying approaches).  Several courts, including this Court in several instances, have granted <u>conditional</u> release, that is, ordering the petitioner's release if the petitioner is not granted a prompt bond hearing before an IJ.  See, e.g., Garcia-Sanchez v. Acuna, No. 25-cv-3115, ECF No. 12 (W.D. Tenn. Jan. 13, 2026) ("Respondents are further ordered to provide Garcia-Sanchez with a bond hearing before an immigration judge under 8 U.S.C. § 1226(a) within seven days of the entry of this Order or otherwise release him.").  Other courts, also including this Court at times, have granted <u>immediate</u> release, either pending a bond hearing—see, e.g., Moreno-Espinoza v. Ladwig, No. 25-CV-03093, 2025 WL 3691452, at *10 (W.D. Tenn. Dec. 19, 2025) ("Respondent is ordered to provide Petitioner with a bond hearing . . . within seven days of the entry of this Order and to release Petitioner pending the bond hearing.")—or without reference to a bond hearing—see, e.g., Cardona, 2025 WL 3722009, at *7; Yao v. Almodovar, No. 25 CIV. 9982, 2025 WL 3653433, at *12 (S.D.N.Y. Dec. 17, 2025) ("ICE is hereby ordered. . . immediately . . . to release Yao from custody.").

Release conditioned on a bond hearing is not appropriate here.  Because ICE purported to detain Vasquez Garcia under § 1225(b)(2)(A), which includes no provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a).  Rather, immediate release is the appropriate remedy for Vasquez Garcia's deprivation of liberty.  See Cardona, 2025 WL 3722009, at *7 ("Because Petitioner's rights to a bond hearing under § 1226(a) have been denied, '[a] bond hearing after the fact, by definition, would not and cannot cure that constitutional violation [and, although Petitioner's] release today cannot cure his loss of liberty since [November 3, the day he was detained], this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing so.'" (quoting Yao, 2025 WL 3653433, at

17

*12)).  Because Vasquez Garcia's detention under § 1225(b)(2)(A) is void ab initio, the appropriate remedy is to restore him to the status quo ante by releasing him immediately.

Next, between the two methods of immediate release—with or without reference to a bond hearing—there appears to be a distinction without a difference.  After all, the Government may at any time detain an illegally present noncitizen under § 1226(a), subject to a bond hearing, and thus it is not necessary for this Court to order one.  ICE has that discretion.  See 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.").  Thus, the Court need not order a bond hearing.

Because ICE's violations of § 1226(a) and of Vasquez Garcia's procedural due process rights deprived him of his liberty for months, see Rodriguez, 2026 WL 36345, at *12 ("[Petitioner's] procedural due process rights are not violated by the very fact [he] is detained. 'Rather, [his rights] are violated because he has been detained without a hearing that accords with due process.'"  Rodriguez, 2026 WL 36345, at *12 (quoting Lopez-Arevelo v. Ripa, No. EP-25-CV-3372025, 2025 WL 2691828, *11 (W.D. Tex. Sep. 22, 2025)), immediate, unconditional release is the appropriate remedy.  If Ladwig, ICE, or DHS later decide to detain Vasquez Garcia under § 1226(a), they must do so lawfully, in conjunction with a bond hearing.[6]

---

[6] Additionally, under INA regulations, the bond hearing is not a necessary step in the decision to detain, but rather a subsequent procedure.  After all, "the bond hearing is not itself an initial custody determination but an act of 're-determination.'"  Cardona, 2025 WL 3722009, at *7 n.12 (citing 8 C.F.R. § 236.1(d)(1) ("After an initial custody determination by the district director, including the setting of a bond, . . . the immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .")).

18

## CONCLUSION

For the reasons stated above, the Petition is **GRANTED**.  Respondent is ordered to release Vasquez Garcia immediately.  Respondent is further **ENJOINED** from pursuing Vasquez Garcia's detention under 8 U.S.C. § 1225(b)(2)(A).  Respondent is **ORDERED** to file a Status Report with this Court on or before March 23, 2026, to certify compliance with this Order.

**IT IS SO ORDERED,** this 16th day of March, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE